CLANAN *v.* CURTIS METAL PRODUCTS COMPANY.

1. MASTER AND SERVANT—MANUFACTURER'S REPRESENTATIVE—COMMISSION—NONJURY CASE—FINDING OF COURT—EVIDENCE.
   Finding of trial judge in nonjury case by manufacturer's representative against defendant tool and die manufacturer for difference between amount plaintiff would have been entitled to under original straight commission arrangement and amount defendant had paid under what it claimed was an agreed-to salary-plus-bonus arrangement, that the parties had agreed to disregard the later arrangement and continue under previous one *held,* not against the preponderance of the evidence, the record disclosing that the testimony on that issue was in sharp dispute.

2. SAME—MANUFACTURER'S REPRESENTATIVE—COMMISSIONS—ACCORD AND SATISFACTION—EVIDENCE.
   Judgment for plaintiff manufacturer's representative in his nonjury action against tool and die manufacturer for balance due under original agreement for compensation on straight commission basis rather than subsequent arrangement claimed by

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 35 Am Jur, Master and Servant §§ 70, 71.
[2] 1 Am Jur, Accord and Satisfaction § 77.

defendant to constitute an accord and satisfaction in that all previous commissions were canceled, the commission basis of payment abrogated and salary and bonus basis adopted *held,* in accordance with the proofs.

Appeal from Macomb; Noe (Alton H.), J. Submitted January 15, 1959. (Docket No. 55, Calendar No. 47,724.) Decided April 14, 1959.

Action by Warren Clanan against Curtis Metal Products Company, a Michigan corporation, for sums due on sales commissions. Judgment for plaintiff. Defendant appeals. Affirmed.

*Watson, Lott & Wunsch* (*Harrison T. Watson,* of counsel), for plaintiff.

*Marx, Levi, Thill & Wiseman* (*Lawrence I. Levi* and *Leib & Leib,* of counsel), for defendant.

CARR, J. At the time of the occurrences from which this case has resulted, and for some time prior thereto, defendant was engaged in the manufacture of tools and dies, principally for the automotive industry. On the 24th of March, 1955, it entered into an agreement with the plaintiff to act as its representative in the obtaining of production work. The contract specified several corporations from whom plaintiff was to endeavor to obtain business. Compensation was agreed to be paid plaintiff for his work on a 5% commission basis. The agreement also provided that plaintiff should not represent any competitor of the defendant. The employment was subject to termination, by either party, on 60 days written notice. Following its execution the parties instituted performance thereunder.

On May 3, 1955, the contract of employment was supplemented by adding to the list of accounts other

prospective customers from whom plaintiff was authorized to seek orders for products manufactured by defendant. Pursuant to the arrangement plaintiff was compensated on a commission basis for several months. On October 3, 1955, defendant submitted to plaintiff a memorandum reading as follows:

"In view of the fact that Mr. Warren Clanan is to be placed on a fixed salary with the Curtis Metal Products Company as of this date, it is hereby agreed that all commissions accumulated against work obtained by Mr. Clanan are hereby forgiven by him; the company, on the other hand, will as of this date forgive all draws against commissions which have been carried on company books. This memorandum supersedes all agreements written prior to this date."

The purported agreement, above set forth, was executed on behalf of defendant by its executive vice-president, Ernest S. Curtis. The signature of plaintiff was also affixed, it being the claim of the latter in this litigation that he was urged to affix his signature and that he did so subject to his expressed reservation that the parties would discuss it further and reach a definite conclusion. Following the signing of the paper, plaintiff continued in defendant's employ until on or about May 31, 1957. Checks were issued to him each week. The aggregate amount received, however, was materially less than the aggregate of compensation due if determined in accordance with the original contract of March 24, 1955. Claiming that he was entitled to be paid during the entire period of his employment on the 5%-commission basis on business obtained by him, plaintiff instituted the present action at law. Defendant, by answer to the declaration, denied any indebtedness owing by it to plaintiff, and by way of special defense pleaded that the memorandum of October

3, 1955, constituted an accord and satisfaction cancelling all previous commissions that may have been due to plaintiff, and abrogated the method of payment for plaintiff's services on that basis.

The case was tried before the circuit judge without a jury. It was plaintiff's claim that he was induced to sign the writing submitted to him on October 3, 1955, without an opportunity to give it full consideration, and that after he had read it carefully he returned to the office of the defendant where he expressed to defendant's executive vice-president, who had procured his signature, his dissatisfaction with the apparent purpose of the memorandum. Thereupon the parties went to the office of the president of defendant corporation, Theodore Curtis, where the matter was discussed between the 2 officers of defendant and plaintiff in the presence of a salesman for defendant, Alfred Knudson.

In substance, plaintiff on the trial relied on the claim that the memorandum of October 3, 1955, was repudiated by mutual agreement. He testified, also, that at the time he signed the agreement it was in form as above set forth, and that, when he took the position with the executive vice-president of the company that he would not accept a salary arrangement, the latter wrote on the memorandum the following:

"This agreement is based on the payment of a bonus on a semiyearly or yearly basis, to be in some relationship with the salesman's effort to obtain work in volume adequate to result in profitable operation: The Co. overhead is assumed to remain about the same as it is at this date."

The initials of the vice-president were affixed to this writing, but no claim is made that plaintiff signed it after the attempted addition. He insisted on the trial that he refused approval. As pointed out by the trial judge in his opinion, the added language

was somewhat ambiguous and uncertain, apparently indicating that plaintiff's ultimate compensation should be determined with reference to his efforts to obtain work for defendant. It will be noted, also, that the memorandum as originally prepared did not specify any salary that plaintiff should receive, nor did it indicate any method by which it was to be fixed. Plaintiff's claim as to the memorandum and the abrogation thereof by mutual agreement at the conference in the office of Theodore Curtis is fairly indicated by the following excerpt from his testimony:

"*Q.* All right. Now relate to the court fairly and to the very best of your recollection exactly what was said by whom and in what order.

"*A.* Well, Ernie, when [he?] got over there, I said to Ernie, I said, 'As far as this letter is concerned,' I said, 'I'm not in agreement with it. And I will not work on a salary for you or anyone else.'

"And he said, 'This is not meant to be a salary.' He said, 'Very well then. You tear up your copy and I'll tear up my copy.'

"*Q.* He said that to you?

"*A.* Very definitely in front of Ted Curtis, in front of Al Knudson, in front of myself. Then Ted Curtis spoke up. He said, 'Warren,' he said, 'I realize you are going to have a good year.' He said, 'We intend to have a good year. I know you can do us a lot of good over at Fisher Body.' And he said, 'We're very happy you are with us and we want you to stay with us.' He said, 'This is not a salary.' He said, 'The only reason I'm asking you to do this at this time,' he says, 'we're all in the same boat.' And he said, 'If I have to pay you at the end of one month 5,000, the next month 6,000.' He said, 'Right at this particular time it will tie up some of their capital.' And he said, 'If you'll go along with us on this basis,' and he said, 'We'll pay you a bonus,' he said, 'I'll give you $1,000 a month now.' And he said, 'I want

to pay your expenses so you can do a little more entertaining.'

"And Ernie spoke up, he said, 'You should do more entertaining.'

"*Q.* All right.

"*A.* At any rate, I said, 'Well, Ted, I'm not going to take a salary.'

"He said, 'This is not a salary.'

"And I said, 'Well, then we revert back to our original contract.' I repeated that.

"And he said, 'No, it's not a salary because all you are doing is helping us at this time because we had arranged to get a loan of $200,000.' And he said, 'This is actually,' he said, 'You're helping the company out at this point, period.'

"And I said, 'Well, as long as it's understood, I'll take your word for it.' I said, 'Your word is good enough for me.' Which I did take his word. And I believed in him 100%, and I also believed Ernie.

"And he said, 'Very well, you destroy your copy, tear up your copy and I'll tear up my copy.' * * *

"And Ernie repeated. And he said, 'We'll revert back onto our old contract.'

"And that's the first and last day that I saw this letter. And when he told me to tear it up, in my mind I was sure that there was nothing to it, that it was torn up. And frankly, I stuck this in my brief case and never gave it another thought.

"*Q.* All right. Now, you did go along with them as long as deferment of any current commissions—

"*A.* That is correct.

"*Q.* — had — by the way, you say that you stated to him that you wouldn't work for a salary for him or for anyone else?

"*A.* That is right.

"*Q.* Had you always worked on a straight commission in your sales work?

"*A.* Yes, sir."

Alfred Knudson was called as a witness in plaintiff's behalf and, after reference to the conference

between the officers of defendant and plaintiff relating to the memorandum of October 3, 1955, testified:

"*Q.* But with specific reference to this letter, did you hear either of the Curtises say, 'Forget the letter, tear it up'?

"*A.* Yes, That's true.

"*Q.* That is true?

"*A.* Which one, I wouldn't verify.

"*Q.* Which one of the Curtises said it?

"*A.* Mr. Ted Curtis and Mr. Ernie Curtis both voiced their opinion at different times during these meetings, and it's hard to visualize which one of the individuals actually made the statements."

The testimony of the president and the executive vice-president was at variance with that of plaintiff and his witness. The officers of the corporation denied that any agreement or understanding was expressed, or reached, that the memorandum on which defendant relies in the instant case should be destroyed and that the parties should proceed in accordance with the original arrangement as enlarged by the supplement of May 3, 1955. Each stated, in substance, that it was understood and agreed that plaintiff should be put on a salary basis, and that this was actually done. On behalf of defendant it was further claimed that the payments made to plaintiff, until his employment was terminated by mutual consent, constituted regular pay-roll payments, and that the checks issued indicated that they were for payments of salary. The position of defendant's officers with reference to plaintiff's claim concerning the abrogation of the memorandum of October 3, 1955, is indicated by the following testimony of Ernest Curtis:

"*Q.* (By Mr. Levi, continuing) Now after this agreement of October the third, 1955, was signed, did Mr. Clanan ever come to you and make any objection,

telling you that he did not want to be on the salary basis?

"*A.* Well, Mr. Clanan objected to the fact that his bonus was not defined in such a way as to clearly tell him what he was going to make. But that was a phase of our discussions that we settled at the time I wrote this handwriting on the corner of this letter. He has never claimed to me—he has never claimed to me specifically about what the nature of his remuneration is.

"*Q.* You didn't get my question. My question was, did Mr. Clanan ever complain to you that he didn't want to be under this agreement of October 3, 1955, to be paid a salary?

"*A.* No.

"*Q.* Now, did Mr. Clanan ever ask you to tear up this agreement of October 3, 1955?

"*A.* Did he ever ask me to tear up an agreement?

"*Q.* Yes.

"*A.* No, never.

"*Q.* Did you ever tell him that if he wanted to you would be agreeable to tearing up the agreement?

"*A.* I want to be a—very specific in answering that question, Mr. Levi, because I heard that mentioned many times today, and I think it's probably an important question. I want you to know that even had I been so inclined as to wish to tear this contract up, I couldn't have done so without the consent of the president of the company, who explicitly wanted this type of a contract to be in existence. And the answer is that I have never suggested tearing this contract up, certainly never to my recollection."

Plaintiff's claims with reference to the reasons for paying him lesser amounts per week than the compensation computed on a 5% commission basis were set forth in his testimony, above quoted in part. According to his version of the agreement reached by the parties at their conference the method pursued in making disbursements to him was adopted

wholly for the benefit of the defendant because of its financial situation.

The conflicting testimony of the parties presented to the trial judge for determination a factual issue with reference to what was actually said at the conference in question. He had the advantage of hearing the testimony as it was given and was in better position to evaluate it than is this Court. It was his conclusion that plaintiff's version as to what occurred was substantially correct, and that the parties had agreed to disregard the memorandum of October 3, 1955, and to continue in accordance with the previous arrangement. Accordingly he entered judgment in favor of plaintiff.

It is the position of the defendant-appellant that the factual finding of the trial judge was against the weight of the evidence. With such contention we are unable to agree. As noted, the testimony was in rather sharp dispute, and as the trier of the facts the burden rested on the judge of determining which of the claimed versions of the conversation between the parties on the occasion in question was correct. It may not be said that the proofs fairly preponderate against his determination of the controversy.

The situation presented is somewhat analogous to that in *Ferries* v. *Copco Steel and Engineering Company,* 344 Mich 345. Involved there was the right of the plaintiff to recover under a contract of employment providing for compensation on a commission basis. Subsequently the defendant sought to modify the arrangement by changing the method of payment for services rendered. The factual issue concerned such claimed modification. The jury determined the matter in favor of the plaintiff, thereby indicating acceptance of his version of conversations between the parties. On appeal it was claimed that the verdict of the jury was against the great weight

of the evidence and reversal was sought on that ground. It was held that the jury was within its rights in accepting the testimony of the plaintiff as to what had occurred between the parties, and that, in consequence, defendant's claim was not tenable. A similar situation obtains in the case at bar. The parties submitted the determination of the factual issue to the trial judge. The record does not support the claim that the judgment rendered was not in accordance with the proofs.

Judgment affirmed, with costs to appellee.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.